UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TULLY CONSTRUCTION COMPANY/A.J.
PEGNO CONSTRUCTION COMPANY, J.V.,

                Petitioner,

        -against-

CANAM STEEL CORPORATION,

                Respondent.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3 2 15
```

**MEMORANDUM
OPINION & ORDER**

13 Civ. 3037 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioner Tully Construction Company/A.J. Pegno Construction Company, J.V.

("Tully") seeks confirmation of an April 24, 2013 arbitration award against Respondent Canam

Steel Corporation ("Canam"). Respondent opposes the petition and cross-moves to vacate the

award on the grounds that the arbitrator manifestly disregarded the law, committed prejudicial

misconduct, and exceeded his authority. For the reasons set forth below, both motions will be

denied and this matter will be remanded to the arbitrator for clarification.

## BACKGROUND[1]

        The underlying arbitration award arises out of a long-running dispute concerning

a contract to supply steel components for the renovation of the Whitestone Expressway. In 2002,

the State of New York hired Petitioner to replace a portion of the Whitestone Bridge, a

suspension bridge that spans the East River and connects the Bronx and Queens via Interstate

678 (the "Project" or "Whitestone Bridge Project"). (Pet. (Dkt. No. 1) ¶ 1; Corey Decl. (Dkt.

No. 17) ¶¶ 4-5) Petitioner engaged Eastern Bridge LLC ("Eastern Bridge"), a steel fabricator

---

[1] Unless otherwise noted, the facts discussed in this opinion are undisputed.

and non-party to this action, to produce and deliver several million dollars worth of structural steel for the Project. (Rogers Decl. (Dkt. No. 8) ¶ 4 & Ex. 2 ("Purchase Order"))

After disputes arose concerning Eastern Bridge's compliance with the terms of the Purchase Order, the parties entered into a May 15, 2007 "Completion Agreement." (Id., Ex. 3) Under the terms of the Completion Agreement, Eastern Bridge promised to deliver the remaining steel components in accordance with a revised delivery schedule. (Id., Ex. 3 Attach. ("Schedule of Delivery and Payment")) The Completion Agreement also includes an arbitration clause, pursuant to which the parties agreed to submit any disputes to binding arbitration, conducted under the rules of the American Arbitration Association ("AAA"). (Id., Ex. 3 ¶ 11 (the "Arbitration Clause"))

In addition to agreeing to modify the delivery schedule for the remaining steel shipments, Petitioner and Eastern Bridge agreed to release and waive all claims against each other that pre-dated the Completion Agreement. (Id., Ex. 3 ¶ 14 (the "Release Clause")) However, the Completion Agreement further provides that

> [i]n the event that the delivery dates as noted in the Schedule [of Delivery and Payment] are missed by three (3) weeks or more, [the Release Clause] is considered void, and the parties are free to seek Arbitration as described in [this agreement] for any and all claims from the inception of the work.

(Id., Ex. 3 ¶ 15)

In July 2007, Respondent Canam entered into an Asset Purchase Agreement ("APA") with Eastern Bridge, whereby it acquired, inter alia, the contract for the Whitestone Bridge Project (the "Whitestone Contract"). (Corey Decl. (Dkt. No. 17), Ex. 2 (APA)) As of the date of the APA, Eastern Bridge had not defaulted on any of its delivery obligations under the Completion Agreement. (Corey Decl. (Dkt. No. 17) ¶ 7)

2

Disputes between Tully and Canam soon arose over the latter's compliance with

the Completion Agreement, and in April 2008, Tully served Canam with a Demand for

Arbitration. (Rogers Decl. (Dkt. No. 8) ¶ 13) The parties subsequently opted to forego

arbitration at that time, however, and instead entered into an October 2008 "Delivery

Agreement." (Id. ¶ 11) The Delivery Agreement states, in relevant part:

> Canam and Tully desire to enter into this Delivery Agreement . . . for the purpose
> of completing all deliveries remaining on the Project, and making payments
> therefor, pursuant to a new Schedule of Delivery and Payment while retaining all
> pre-existing rights, claims and defenses to be determined in mediation or
> arbitration as provided in the parties' May 15, 2007 Agreement and any written
> modifications thereto which have been signed by both Tully and Canam including
> this Delivery Agreement.

(Id., Ex. 10 at 1 (emphasis added))[2] The Delivery Agreement further states:

> Tully agrees to stay and hold the Tully Arbitration in abeyance until such time
> that the Mediation has been concluded and all remaining steel has been delivered
> and all payments due under this agreement have been made into Escrow.
> However, should Canam fail to deliver the steel or Tully fail to make payments in
> accordance with this Delivery Agreement, either party may commence arbitration
> or other proceedings to enforce the terms of this Delivery Agreement and any
> prior agreement, subject to all rights and defenses as may exist. The venue for the
> Tully Arbitration shall be New York.

(Id., Ex. 10 at 4-5 (emphasis added)) Under the terms of the Delivery Agreement, all remaining

steel shipments are to be delivered by June 1, 2009. (Id., Ex. 10 Attach. ("New Schedule of

Delivery and Payment")) Canam did not make its final steel delivery until September 17, 2009,

however. (Rogers Decl. (Dkt. No. 8) ¶ 12)

On December 30, 2009, Tully filed a Demand for Arbitration with the AAA,

seeking damages for breach of contract as well intentional and negligent misrepresentation. (Id.,

Ex. 15) Canam filed an answer and counterclaim in which it denied liability and demanded

reimbursement for additional costs it purportedly incurred due to delays caused by Tully. (Id.,

---

[2] Citations reflect page numbers as designated on the ECF system.

Ex. 16 at 1, 3, 12)  Tully's claims totaled more than $20 million (id., Ex. 15), while Canam's claims amounted to nearly $5.25 million.  (Id., Ex. 16 at 15)

On April 23, 2012, Tully and Canam agreed to dispense with the AAA-administered arbitration, and instead entered into a private Arbitration Agreement.  (Id., Ex. 17 (the "Arbitration Agreement"))  The parties selected Canam's nominee, John J. P. Krol, to serve as arbitrator.  (Corey Decl. (Dkt. No. 17) ¶ 19)  The arbitration hearing began on November 6, 2012, and concluded on January 30, 2013.  (Rogers Decl. (Dkt. No. 8) ¶¶ 26 & 31)  The arbitrator heard seventeen days of testimony from nine fact and two expert witnesses, and admitted more than 800 exhibits into evidence.  (Id. ¶ 31)

Post-hearing briefing was completed on April 16, 2013 (Rogers Decl. (Dkt. No. 8) ¶ 32), and the arbitrator issued his award on April 24, 2013.  (Id., Ex. 1 (Final Award of Arbitrator))  Because the critical issue here relates to the content of the award, the entire two-page award is reproduced verbatim below:

### FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement **(Parties-1)**[3] entered into between the parties and dated April 23, 2012, and having duly heard the proofs and allegations of the Parties, do hereby, FIND, as follows:

This dispute arises out of agreements between the parties, Tully Construction Company, Inc./ A.J. Pegno Construction Corp., J.V. (hereinafter "Claimant") and Canam Steel Corporation (hereinafter "Respondent") made subsequent to the July 16, 2007 Asset Purchase Agreement **(R-29, Tab D)** and the dispute is in connection with construction of certain portions of the Whitestone Expressway, Queens County, New York.

This FINAL AWARD OF ARBITRATOR is limited pursuant to the terms of the Arbitration Agreement **(Parties-1)** to those claims of Claimant, Tully

---

[3] The bolded citations appear to refer to exhibits or other materials that were made part of the record of the arbitration proceeding.

4

Construction Company, Inc./ A.J. Pegno Construction Corp., J.V. solely against
Respondent, Canam Steel Corporation; and Respondent's counterclaims.

On its claims, Claimant is granted, for

| | | |
|---|---|---|
| Contract Overpayment | $ | 0.00 |
| Projected Liquidated Damages and Engineering Charges | | 0.00 |
| Cornell Liquidated Claim **(C-478)** | | 2,831,703.00 |
| Labor Escalation | | 1,174,667.00 |
| Concrete Escalation | | 0.00 |
| Winter Provisions **(C-478)** | | 155,523.00 |
| Home Office Overhead | | 563,714.00 |
| Field Overhead and Field Staff | | 2,158,329.00 |
| Miscellaneous Backcharges | | 0.00 |

**Claimant Total**                                        **$ 6,883,936.00**

On its counterclaims, RESPONDENT is granted, for

| | | |
|---|---|---|
| Material | $ | 0.00 |
| Detailing | | 0.00 |
| Miscellaneous and other (testing, etc.) **(R-20, pg. 15)** | | 156,202.00 |
| Fabrication and Equipment Rental | | 0.00 |
| Painting **(R-20, pg. 16)** | | 210,712.00 |
| Trucking | | 0.00 |
| Direct Labor & Indirect Costs | | 0.00 |

**Respondent Total**                                      **$   366,914.00**

Accordingly, I AWARD as follows:

Within thirty (30) days from the date of transmittal of this Award to the Parties,
RESPONDENT shall pay to CLAIMANT, the "initial award" **(C-536, TPJV 000
25888)** sum of **SIX MILLION, FIVE HUNDRED SEVENTEEN
THOUSAND, TWENTY-TWO DOLLARS AND NO CENTS**
($6,517,022.00)[,] less the amount that Claimant may now reimburse itself from
escrow (approximately $961,100.00), with interest on the remaining amount; i.e.,
$6,517,022.00 – approximately $961,100.00, at 9% per annum, without
compounding, from September 19, 2008 **(R-20, pg. 17, fn. 12; Canam Post
Hearing Memorandum, pg. 14)**, until payment.

The Attorney's Fees and Expenses of each party shall be borne as incurred.

The compensation and expenses of the arbitrator shall be borne equally.

The Parties are to arrange to obtain all drawings or exhibits in the possession of the Arbitrator by August 12, 2013, after which date said documents shall be destroyed.

If any provision of this Final Award or the application of any such provision to any person or circumstance is held invalid, the remainder of this interim award, and the application of such provision other than the extent to which it is held invalid, will not be invalidated or affected thereby.

This Final Award is after full and complete consideration and in full and complete settlement of all claims, offsets, or counterclaims which were submitted or which could have been submitted in this Arbitration. All claims or counterclaims between the parties not expressly granted herein are hereby denied.

This Final Award shall be enforceable under the provisions of New York State law, CPLR Article 75; the Federal Arbitration Act, 9 USC Section 1 et seq.; and the United Nations Convention on Contracts for the Internal Sale of Goods as applicable.

An electronically transmitted version of this document is deemed an original.

(Id., Ex. 1 at 1-2)

On April 26, 2013, Canam requested that the arbitrator withdraw his April 24, 2013 award and instead issue a "reasoned award." Canam argued that both the parties' Arbitration Agreement and a pre-arbitration scheduling order issued by the arbitrator require a "reasoned award." (Rogers Decl. (Dkt. No. 8), Ex. 26) Tully opposed Canam's request, stating that it "view[ed] the award issued as both a line item award [and an award] with reasons provided so as to satisfy the Scheduling Order." (Corey Decl. (Dkt. No. 17), Ex. 8, at 1) In an email dated May 3, 2013, Arbitrator Krol denied Respondent's request to withdraw the award, stating,

The FINAL AWARD OF ARBITRATOR dated 24 April 2013 is a "reasoned award" under all applicable rules, statutes, and case law. As counsel are aware, the progression of award types, from least to most complex, is acknowledged by the arbitration community to be: 1) Standard (or "Bare") Award; 2) Reasoned Award; and 3) Findings of Fact and Conclusions of Law.

6

The FINAL AWARD OF ARBITRATOR dated 24 April 2013 sufficiently and specifically incorporates all credible evidence adduced during the hearings, detailing the liability for each item of claim and counterclaim, and, as such, is a "reasoned award". In its two page form, the FINAL AWARD does not differ substantially, except for the allocation of liability, from the proposed two and one-half page award submitted by Respondent's Counsel on April 17, 2013.

(Id., Ex. 15)

On May 6, 2013, Tully moved to confirm the award. (Dkt. No. 1) Canam filed

an opposition to Tully's petition and cross-moved to vacate the award. (Dkt. No. 7)

## DISCUSSION

## I. LEGAL STANDARD FOR VACATUR AND CONFIRMATION

"Following issuance of an arbitration award, § 9 of the Federal Arbitration Act

('FAA') provides that a party may apply to a district court 'for an order confirming the award,

and thereupon the court must grant such an order unless the award is vacated, modified, or

corrected as prescribed in sections 10 and 11 of this title.'" STMicroelectronics, N.V. v. Credit

Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011) (quoting 9 U.S.C. § 9).[4] "Arbitration

awards are subject to very limited review in order to avoid undermining the twin goals of

arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."

Folkways Music Publishers v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993).

The Second Circuit has explained that,

---

[4] While the FAA permits vacatur of an arbitration award, it does not provide federal courts with an independent grounds for jurisdiction. Hall Street Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581-82 (2008) ("As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being something of an anomaly in the field of federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.") (citation and internal quotation marks omitted). Here, this Court has jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and there is diversity of citizenship between Tully, a New York joint venture, and Canam, a Maryland corporation. (See Pet. to Confirm (Dkt. No. 1) ¶ 1-3)

[n]ormally, confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "'if a ground for the arbitrator's decision can be inferred from the facts of the case,'" Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991) (quoting Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir. 1972)). Only "a barely colorable justification for the outcome reached" by the arbitrators is necessary to confirm the award. Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992). A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high. Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997).

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

Under Section 10 of the FAA, an arbitration award may be vacated where:

(1) . . . the award was procured by corruption, fraud, or undue means;

(2) . . . there was evident partiality or corruption in the arbitrators, or either of them;

(3) . . . the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) . . . the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

"As a 'judicial gloss' on [S]ection 10(a), the Second Circuit recognizes two additional bases for vacatur: where the award is in 'manifest disregard' of the law or of the terms of the parties' agreement." Am. Centennial Ins. Co. v. Global Int'l Reinsurance Co., Ltd., 12 Civ. 1400 (PKC), 2012 WL 2821936, at *7 (S.D.N.Y. July 9, 2012) (citation omitted); see also Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 452 (2d Cir. 2011) ("Under FAA § 10,

8

an arbitrator's award may also be vacated 'where the arbitrator's award is in manifest disregard of the terms of the [parties' relevant] agreement.'" (quoting Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)); Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008), rev'd on other grounds and remanded, Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010) ("'[M]anifest disregard,' reconceptualized as a judicial gloss on the specific grounds for vacatur enumerated in [S]ection 10 of the FAA, remains a valid ground for vacating arbitration awards.").[5]

## II.    ANALYSIS

Canam argues that the award must be vacated because the arbitrator (1) manifestly disregarded the law by (a) refusing to give preclusive effect to a July 26, 2010 order issued by the New Hampshire Superior Court in a litigation between Canam on the one hand, and Tully and Eastern Bridge on the other, and (b) ignoring a February 15, 2008 Letter Agreement (the "Letter Agreement") that purportedly modified the terms of the parties' contractual relationship; (2) erroneously admitted an expert report through the testimony of a non-expert; and (3) exceeded his authority by failing to issue a "reasoned award" – as called for by the parties' Arbitration Agreement – and/or by issuing a wholly irrational award. (Canam's Memorandum of Law in Support of its Cross-Petition to Vacate the Arbitration Award and in Opposition to Tully's Petition to Confirm ("Resp. Br.") (Dkt. No. 9)

---

[5] The Supreme Court has not ruled on whether "manifest disregard" of the law constitutes an independent basis for vacatur. See Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584-86 (2008) (noting that Supreme Court has never endorsed "manifest disregard" as a basis for vacatur independent of the grounds listed in § 10 of the FAA); Stolt-Nielsen S.A., 559 U.S. at 672 n.3 ("We do not decide whether 'manifest disregard' survives our decision in [Hall St.] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10.") Because the Second Circuit has held that "'manifest disregard' . . . remains a valid ground for vacating arbitration awards," Stolt-Nielsen, 548 F.3d at 94, this Court applies that standard here.

## A.     The Arbitrator Did Not Manifestly Disregard the Law

Canam argues that the award must be vacated because the arbitrator "manifestly disregarded the law" by refusing to (1) give a July 26, 2010 New Hampshire Superior Court order binding effect under principles of res judicata and collateral estoppel; and (2) apply the terms of the Letter Agreement – allegedly entered into by Tully and Canam on or about February 15, 2008 – which purportedly modifies the steel delivery schedule. (Id. at 7-13; see Rogers Decl. (Dkt. No. 8), Ex. 5) Neither argument has merit.

In December 2009, Canam brought a declaratory judgment action against Tully and Eastern Bridge in New Hampshire state court. Canam sought a declaration that it had no remaining liability under the Whitestone Contract. (Rogers Decl. (Dkt. No. 8), Ex. 4: Canam Steel Corp. v. Eastern Bridge LLC n/k/a River Road Bridge, LLC and Tully Constr. Co./A.J. Pegno Constr. Corp. JV, No. 09-E-490, slip op. (N.H. Super. Ct. July 26, 2010) (the "New Hampshire Order"))

Tully argued that the New Hampshire court lacked jurisdiction. (Id., Ex.4 at 1) While the New Hampshire court concluded that it had "jurisdiction to resolve the parties' disputes over the terms of the APA because it is governed by New Hampshire law and does not contain an arbitration agreement" (id., Ex.4 at 6), the court stated that it would not

> adjudicate the application of the APA to the Delivery Agreement or the [Completion] Agreement. Once the legal rights of the parties are determined under the APA, it is appropriate for the arbitration panel to apply those rights to the agreements in question. Accordingly, the court limits this order to the terms of the APA between Canam and Eastern Bridge.

(Id., Ex.4 at 6-7 (emphasis added))

The New Hampshire court went on to rule that

10

[u]nder Section 2.03 of the APA, Canam expressly assumed all liabilities arising
under the Whitestone [C]ontract except the liabilities attributable to Eastern
Bridge's failure to comply with the Whitestone [C]ontract before the date of the
APA.  Therefore, Canam did not assume liability for any breach of contract that
occurred before July 16, 2007.

(Id., Ex.4 at 8)  Despite stating that its order would be limited "to the terms of the APA between

Canam and Eastern Bridge" (id., Ex.4 at 7), the New Hampshire court went on to offer the

following observations concerning the issue of whether Canam had succeeded in preserving the

APA's limitations on its liability when it entered into the subsequent Delivery Agreement:

The Delivery Agreement . . . expressly limited Canam's liability . . . . [F]rom at
least the date that Canam and Tully signed the Delivery Agreement, Canam
assumed any liabilities for actions arising out of breach of the Whitestone
contract, including the Completion Agreement.  Canam, however, successfully
preserved the prior limits of liability that it negotiated in the APA.

(Id., Ex.4 at 9-10)  The New Hampshire Superior Court's order was affirmed by the New

Hampshire Supreme Court.  (Id., Ex. 13: Canam Steel Corp. v. Eastern Bridge LLC & a., No.

2010-0652, slip op. at 2-3 (N.H. Sup. Ct. May 19, 2011)).

          Prior to the arbitration hearings, Canam moved to dismiss some of Tully's claims,

arguing that it was not liable for damages Tully suffered as a result of delays that occurred prior

to Canam's acquisition of the Whitestone Contract.  In support of its argument, Canam asserted

that the New Hampshire Order disposed of this issue on the merits, and that – under principles of

res judicata – the arbitrator was bound to follow that decision as an enforceable foreign

judgment.[6]  (Id., Ex. 19)  Tully argued, however, that the New Hampshire Superior Court's

discussion of Canam's potential liability to Tully was "in direct conflict with [the court's] own

ruling that its jurisdiction was limited to interpreting the APA and the liabilities between Eastern

---

[6] On February 1, 2012, Canam filed the July 26, 2010 New Hampshire Order in New York
County Supreme Court as a foreign judgment under CPLR § 5402.  (Rogers Decl. (Dkt. No. 8),
Ex. 14 ("New York Order"))

[Bridge] and Canam under that contract alone, and, therefore, constitutes obiter dicta." (Id., Ex.

20 (Tully's Opposition to Motion to Dismiss ("Pet. Arbitration Opp. Br.") at 6))

            In an October 22, 2012 "Interlocutory Determination," the arbitrator accepted

Tully's argument:

> Since the Superior Court held that its limitation was to the terms of the APA
> between Canam and Eastern Bridge, language by the court regarding that
> acknowledged limitation is properly considered superfluous obiter dicta, without
> preclusive effect under either the doctrines of res judicata or collateral estoppel,
> the persuasiveness and scope of which is to be determined in arbitration.

(Id., Ex. 21)

            Canam argues that the arbitrator erred in issuing this ruling. See Resp. Br. (Dkt.

No. 9) at 10 n.6 ("Canam disagrees that this portion of the Order was dicta."). The law is clear,

however, that "[t]he erroneous application of rules of law is not a ground for vacating an

arbitrator's award." See Siegel v. Titan Indus. Corp., 779 F.2d 891, 892-93 (citing I/S Stavborg

v. National Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir. 1974); see also Goldman v.

Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002) ("Given the deference afforded

arbitration decisions, this standard requires more than a mistake of law or a clear error in fact

finding."); see also Sotheby's Int'l Rlty., Inc. v. Relocation Grp., LLC, 588 F. App'x 64, 65 (2d

Cir. 2015) ("Manifest disregard . . . 'is a doctrine of last resort – its use is limited only to those

exceedingly rare instances where some egregious impropriety on the part of the arbitrators is

apparent.'") (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383,

389 (2d Cir. 2003)). Rather, "[a]n arbitral award may be vacated for manifest disregard of the

law only if a reviewing court find[s] both that (1) the arbitrators knew of a governing legal

principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators

was well defined, explicit, and clearly applicable to the case." Wallace v. Buttar, 378 F.3d 182,

189 (2d Cir. 2004) (emphasis added) (citations and internal quotation marks omitted); see also, Sotheby's, 588 F. App'x at 65 ("[T]his Court has imposed the following three requirements in order to find that an award was issued in manifest disregard of the law[:] . . . [(1)] the law that was allegedly ignored was clear, . . . . [(2)] the arbitrators did in fact err in their application of the law, and that the outcome reached was erroneous[, and (3)] the arbitrators knew of the law's existence and its applicability to the problem before them")

Canam contends that this standard is met here because (1) the arbitrator knew of, and refused to apply, the New Hampshire Order, and (2) in doing so ignored clearly-established New York law that arbitrators must apply the doctrines of collateral estoppel and res judicata to bar re-litigation of issues already decided. (Resp. Br. (Dkt. No. 9) 9-10)

Canam's argument mischaracterizes both the applicable law and the arbitrator's actions, however. The Second Circuit has made clear that "an arbitral panel's refusal or neglect to apply a governing legal principle clearly means more than error or misunderstanding with respect to the law." Wallace, 378 F.3d at 189 (emphasis added) (citations and internal quotation marks omitted). "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." Id. at 190. To the contrary, all that is necessary for this Court to uphold the award is "'a barely colorable justification'" for the arbitrator's decision. Id. (quoting Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 263 (2d Cir. 2003)).

Here, there is ample support for the arbitrator's ruling. Given that the New Hampshire court explicitly "limits [its] order to the terms of the APA between Canam and Eastern Bridge" (Rogers Decl. (Dkt. No. 8), Ex. 4 (New Hampshire Order) at 7), the arbitrator correctly found that any language concerning Canam's liability to Tully (a non-party to the APA)

13

was <u>dicta</u> that had no preclusive effect in the arbitration proceedings. Although not obligated – under the terms of the Arbitration Agreement – to provide legal authority for this ruling, the arbitrator cited precedent supporting his conclusion. <u>See</u> Rogers Decl. (Dkt. No. 8), Ex. 21 (Interlocutory Decision) (citing and quoting <u>Pollicino v. Roemer & Featherstonhaugh P.C.</u>, 277 A.D.2d 666, 668 (3rd Dept. 2000) ("Language that is not necessary to resolve an issue, however, constitutes dicta and should not be accorded preclusive effect[.]")).[7]

      Canam's disagreement with the arbitrator's decision on this point provides no basis for vacating the award. Arbitral awards are to be vacated "only in the most egregious instance of misapplication of legal principles." <u>Wallace</u>, 378 F.3d at 190. In any event, here there is no misapplication of legal precedent, given that the arbitrator reasonably concluded that the language at issue is <u>dicta</u>.

      Respondent's argument concerning the February 15, 2008 Letter Agreement is likewise not persuasive. Canam argues that the Letter Agreement is a contractual modification that extends the steel delivery schedule for the Project. Canam further argues that the arbitrator manifestly disregarded the law by ignoring the Letter Agreement and its revised delivery schedule, which caused the arbitrator to miscalculate the length of Canam's delay and led to an inflated damage award. <u>See</u> Resp. Br. (Dkt. No. 9) at 13 ("The Arbitrator manifestly disregarded the delivery dates in the Letter Agreement, whereby under its terms Canam was only five days late . . . , and awarded Tully [damages for 16 months' delay] . . . ."). Tully denies that it ever entered into the Letter Agreement, and further argues that it "proved during the arbitration that

---

[7] Other New York decisions reiterate the same point. <u>See, e.g.</u>, <u>Chiarini v. County of Ulster</u>, 9 A.D.3d 769, 770 (3rd Dept. 2004) ("Dicta . . . 'should not be accorded preclusive effect.'") (citation and internal quotation marks omitted); <u>Sahn v. AFCO Industries</u>, 192 A.D.2d 480 (1st Dept. 1993).

14

the Letter Agreement was nothing more than an 'agreement-to-agree,' which is unenforceable under New York law." (Corey Decl. (Dkt. No. 17) ¶ 11)

The effect of the Letter Agreement on the parties' obligations was a matter for the arbitrator to decide based on the evidence before him, and Canam has provided no basis for this Court to disturb his finding. The arbitrator, unlike this Court, had the benefit of hearing many hours of testimony, which in turn shed light on voluminous evidentiary exhibits. There is no indication from the face of the record that the arbitrator grossly misapplied a clearly applicable rule of law. To the contrary, the effect of the Letter Agreement on the parties' contractual relationship, if any, was a contested issue of law and fact throughout the arbitration. This is thus not a situation in which an arbitrator "knew of a governing legal principle yet refused to apply it or ignored it altogether." Wallace, 378 F.3d at 189. Nor can this Court conclude that there was "no colorable justification" for the arbitrator's decision. Id. at 193.

Canam's arguments concerning the Letter Agreement ignore one of its key provisions. The Letter Agreement states that "[t]his change of delivery schedule is without prejudice to Tully's expectation that the steel would be delivered pursuant to the time frame included in P[urchase] O[rder] No. 02-315-23 dated January 23, 2003." (Rogers Decl. (Dkt. No. 8), Ex. 5) Assuming arguendo that the Letter Agreement modifies the steel delivery schedule, Canam acknowledges that it breached this revised discovery schedule: "the last of the steel girders were delivered five days late." (Resp. Br. (Dkt. No. 9) at 2) In breaching even the revised delivery schedule, Canam arguably exposed itself to liability for prior missed deadlines.

Even if this Court were inclined to reach a different conclusion, New York law is clear that "[t]he mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those

15

provisions as to empower a court to set aside the award." Nat'l Cash Register Co. v. Wilson, 8

N.Y.2d 377, 383 (1960); see also Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504,

509 (2001) (per curiam) ("When an arbitrator resolves disputes regarding the application of a

contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does

not provide a basis for a reviewing court to refuse to enforce the award.") (citation and internal

quotation marks omitted).  Similarly, to the extent that Canam argues that the arbitrator's

decision was issued in manifest disregard of the evidence, "'the Second Circuit does not

recognize manifest disregard of the evidence as [a] proper ground for vacating an arbitrator's

award.'"  Wallace, 378 F.3d at 193 (quoting Success Sys., Inc. v. Maddy Petroleum Equip., Inc.,

316 F. Supp. 2d 93, 94 (D. Conn. 2004)).

        For all of these reasons, Canam is not entitled to vacatur of the award on the

grounds that the arbitrator manifestly disregarded the law.

## B.    The Arbitrator Committed No Misconduct

        Canam next argues that the arbitrator effectively denied it the opportunity to

present relevant and material evidence, and thereby committed misconduct under 9 U.S.C.

§ 10(a)(3).  The "evidence" at issue concerns Tully's claim for damages related to additional

expense Cornell & Company ("Cornell") – Tully's steel erector – incurred as a result of delays

caused by Canam and Eastern Bridge (the "Cornell Liquidated Claim").  (Rogers Decl. (Dkt. No.

8) ¶ 27)  Canam asserts that

> the evidentiary basis for Tully to prove that its alleged damages for the
> Cornell Liquidated Claim amounted to $2,831,703 was a two-volume
> Request for Equitable Adjustment ("REA") prepared by Cornell's expert
> witness in August 2009 – three years before the hearing in this arbitration.
> Tully introduced the REA through fact witness Otto Schatz, an officer of
> Cornell, rather than through the expert who authored the REA.  Canam
> repeatedly and vigorously objected to the introduction of the REA because

16

> Canam had no opportunity to cross-examine the expert who prepared the
> REA, and was consistently overruled by the arbitrator, who admitted that
> "I understand you're going to be precluded from cross-examining the
> expert." Rogers Decl., Ex. 23 (December 11, 201[2] Transcript of Otto
> Schatz (excerpt) at 195:14-17).

(Resp. Br. (Dkt. No. 9) at 22-23)  Canam argues that "the Arbitrator's actions were tantamount to

precluding cross-examination of the evidence to be secured from that cross-examination." (Id. at

23)

Canam offers no legal support for its argument that the arbitrator's error in

admitting the expert report through a Cornell witness requires that the arbitral award be vacated

under 9 U.S.C. § 10(a)(3).  Courts "narrowly construe[]" Section 10(a)(3) "so as 'not to impinge

on the broad discretion afforded arbitrators to decide what evidence should be presented.'"

Rubenstein v. Advanced Equities, Inc., No. 13 Civ. 1502 (PGG), 2014 WL 1325738, at *6

(S.D.N.Y. Mar. 31, 2014) (quoting GFI Sec. LLC v. Labandeira, No. 01 Civ. 00793 (JFK), 2002

WL 460059, at *6 (S.D.N.Y. Mar. 26, 2002)).  To warrant vacatur of an arbitrator's award,

"[t]he misconduct of the arbitrator must amount to a denial of fundamental fairness. . . ." Id.

(quoting Labandeira, 2002 WL 460059, at *6).  Accordingly, "'[o]nly the most egregious error

which resulted in adversely affecting the rights of a party would justify . . . and require vacatur of

an award.'"  Id. (quoting Labandeira, 2002 WL 460059, at *6 (quoting Pompano-Windy City

Partners, Ltd. v. Bear Stearns & Co., Inc., 794 F. Supp. 1265, 1277 (S.D.N.Y. 1992)).  Canam

has not come close to meeting this standard here.

Contrary to Canam's argument, large portions of the REA were not, in fact,

admitted into evidence because Arbitrator Krol sustained Canam's objections.  For example,

Arbitrator Krol sustained Canam's objection to Volume I of the REA in its entirety, and also

excluded significant portions of Volume II.  (Corey Decl. (Dkt. No. 17) ¶ 35 (citing id., Ex. 17:

17

("Arbitration Transcript" ("Arb. Tr.")) at 1170-1238))  Moreover, the arbitrator's statement

Canam relies on – "I understand you're going to be precluded from cross-examining the expert"

– was made in reference to Volume I, which was not admitted into evidence.  See id. ¶ 37; id.,

Ex. 17 (Arb. Tr.) at 1195.  The excerpts from Volume II that were admitted into evidence consist

of "contemporaneous project records and documents prepared by Cornell."  (Id. ¶ 38)  Canam

has not shown that the arbitrator committed any error in admitting these documents, much less

error so egregious as to warrant vacatur of the award.  Accordingly, Canam's motion to vacate

the arbitrator's award on grounds of misconduct is denied.

### C.    The Failure to Issue a "Reasoned Award"

Finally, Canam argues that the Arbitrator "exceeded [his] powers" by (1)

"refus[ing] to satisfy his obligation under the Arbitration Agreement and his own Preliminary

Hearing Order to issue a 'reasoned' award, as that term is recognized and defined by courts and

practitioners"; and (2) issuing a "wholly irrational" award.  (Resp. Br. (Dkt. No. 9) at 17, 20)

According to Canam, the arbitrator should have issued an award that "set forth 'the history of the

dispute,'" "'[laid] out the facts, describe[d] the contentions of the parties,'" and provided "'the

[Arbitrator's] rationale' or reasoning as to why Canam is liable for $6,883,936 and only entitled

to $366,914 on its counterclaim, or how the individual calculations were reached, including the

delay period for which the damages were award."  See id. at 18 (alterations in original) (quoting

Am. Centennial, 2012 WL 2821936, at *9).

As noted above, Section 10(a)(4) of the FAA authorizes a federal district court to

vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly

executed them that a mutual, final, and definite award upon the subject matter submitted was not

made."  9 U.S.C. § 10(a)(4).  Here, Canam's argument about the form and content of the award

18

requires this Court to determine what form an arbitrator's award must take when the parties'
contract calls for a "reasoned award."

### 1.    The Arbitration Agreement Requires a "Reasoned Award"

The Arbitration Agreement provides that the arbitration will be governed by the

AAA Arbitration Rules for Complex Construction Cases. See Rogers Decl. (Dkt. No. 8), Ex. 17

at 3 ("AAA Rules Apply. This Private Arbitration will not be administered by the AAA but the

AAA Arbitration Rules for Complex Construction Cases will apply." (emphasis in original)).

Rule 44 of the AAA Arbitration Rules for Complex Construction Cases provides

that

(a) Any award shall be in writing and signed by a majority of the arbitrators. It
shall be executed in the form and manner required by law.

(b) In all cases, unless waived by agreement of the parties, the arbitrator shall
provide a concise written financial breakdown of any monetary awards and, if
there are non-monetary components of the claims or counterclaims, the
arbitrator shall include a line item disposition of each non-monetary claim or
counterclaim.

(Id., Ex. 28) Rule L-6 of the AAA's Rules states: "Form of Award[.]  In addition to the award

requirements set forth in R-44(a) and (b) unless the parties agree otherwise, the arbitrator shall

issue a reasoned award."  (Id., Ex. 28) (emphasis added).  Accordingly, in addition to the

standard requirements that the award be in writing and contain a "concise written financial

breakdown" of damages, the parties' Arbitration Agreement requires that the award be a

"reasoned award."[8]

The fact that the Arbitration Agreement requires a "reasoned award" was

confirmed in a scheduling order issued by Arbitrator Krol. On June 26, 2012, Krol conducted a

---

[8] Tully's brief is thus misleading when it asserts that "[t]he Arbitration Agreement . . . is silent
as to the form of award." (Pet. Br. (Dkt. No. 18) at 13)  The Arbitration Agreement incorporates
by reference AAA rules that require a "reasoned award."

preliminary hearing with the parties' counsel. (Rogers Decl. (Dkt. No. 8), Ex. 18)  During that conference, the form of the award was discussed, and Canam's counsel requested a "reasoned award." (Corey Decl. (Dkt. No. 17) ¶ 20)  After the conference, Arbitrator Krol issued a Report of Preliminary Hearing and Scheduling Order ("Scheduling Order") which states that the "arbitrator's decision shall be reasoned." (Rogers Decl. (Dkt. No. 8), Ex. 18, at 3)

Tully does not dispute that the Arbitration Agreement provides for a "reasoned award" or that the Scheduling Order states that the arbitrator's decision "shall be reasoned." (Corey Decl. (Dkt. No. 17) ¶¶ 20-21)  Tully asserts, however, that in response to Canam's request at the preliminary hearing, Tully's counsel stated, "[i]f by reasoned award you mean line item award, then yes." (Id. ¶ 20)  Canam's counsel denies that any such statement was made (Rogers Reply (Dkt. No. 21) ¶ 6), and no verbatim record of the preliminary hearing exists.

The dispute about what was said at the preliminary hearing is of no moment.  "It is well settled that 'extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face.'" W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990) (quoting Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 379 (1969)).  Here, the parties explicitly agreed in the Arbitration Agreement that the arbitration proceeding would be governed by the AAA's Arbitration Rules for Complex Construction Cases. See Rogers Decl. (Dkt. No. 8), Ex. 17 at 3).  Those rules unambiguously provide for a "reasoned award." (Id., Ex. 28 at Rule L-6)

It is also clear from context that the term "reasoned award" necessarily means something more than the line item award issued here.  Under Rule 44 (a) and (b), an arbitrator is required to "provide a concise written financial breakdown of any monetary awards." (Id., Ex. 28 at Rule 44(b))  Where the parties have agreed to be bound by Rule L-6, the arbitrator is

20

required to issue "a reasoned award" "[i]n addition to the award requirements set forth in R-44(a) and (b)." See id., Ex. 17 at 3, Ex. 28 at Rule L-6) (emphasis added).

Tully argues, however, that Canam consented to the form of the award issued by Arbitrator Krol, and thus, in essence, agreed to modify the Arbitration Agreement. At the conclusion of the arbitration hearing, Krol invited the parties to submit post-hearing briefing. (Corey Decl. (Dkt. No. 17), Ex. 10 (Arb. Tr.) at 2861-62) The arbitrator also directed the parties to submit a "two-page dream award," explaining that he wanted to "make sure [he addressed] every[]one of the items of damages":

| Arbitrator Krol: | There is one idiosyncrasy I have.  I would like you to also send me with the reply a two-page dream award.  Just lay out what you would like to see. |
|---|---|
| [Tully's counsel]: | Form of award? |
| Arbitrator Krol: | Form of award.  That's more so I make sure I get every[]one of the items of the damages in there.  So, don't go crazy about it, but just lay out everything that you expect me to be looking at. |
| [Tully's counsel]: | In the reply[?] |
| Arbitrator Krol: | Yes, in the reply. |
| [Tully's counsel]: | Thanks for the clarification. |
| [Canam's counsel]: | Let me huddle briefly. |
| (Pause in the proceedings.) | |
| Arbitrator Krol: | Anything else we need to put on? |
| [Canam's counsel]: | No, I think we're fine. |

(Id. at 2862-63) Tully claims that Canam's statements during this colloquy, and its subsequent submission of the requested "dream award" – amount to an agreement to modify the Arbitration

Agreement to provide for a line-item award with no reasoning. See Tully's Memorandum in

Opposition to Cross-Petition to Vacate Arbitration Award ("Pet. Opp. Br.") (Dkt. No. 18) at 17.

Tully's argument is not persuasive.

    The arbitrator's statements make clear that the "two page dream award" was

designed merely to assist him in ensuring that he addressed "every[ ]one of the line items of the

damages [sought by the parties]." The arbitrator told the lawyers, "don't go crazy about it, but

just lay out everything that you expect me to be looking at." (Corey Decl. (Dkt. No. 17), Ex. 10

(Arb. Tr.) at 2863) In effect, the arbitrator asked the parties to submit a checklist of the damages

they sought, to assist the arbitrator in ensuring that he ruled on every such request. There is no

evidence that, in doing so, the arbitrator was announcing that he would issue a line-item award.

Nor does anything in the record suggest that Canam agreed to or acquiesced in the arbitrator

issuing something less than a "reasoned award."

### 2.  The Arbitration Award Does Not Constitute a "Reasoned Award"

    Having determined that the parties agreed that the arbitrator would issue a

"reasoned award," the Court next considers whether Arbitrator Krol's award satisfies this

requirement. As a general matter, an "arbitrator's rationale for an award need not be explained."

D.H. Blair & Co., 462 F.3d at 110; see also United Steelworkers of Am. v. Enter. Wheel & Car

Corp., 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their

reasons for an award.") Accordingly, the default rule in an arbitration in which the parties have

not requested a specific form of award is that the arbitrator may issue a "standard" award (also

referred to as a "general," "regular," or "bare" award) that simply announces the result. See Cat

Charter, LLC v. Schurtenberger, 646 F.3d 836, 844 (11th Cir. 2011) ("[I]n a typical arbitration

where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a result.").

Because arbitration is a matter of contract, parties are free to contract around the default rule. (Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) ("The FAA . . . places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." (citations omitted)). For example, parties may require the arbitrator to provide a more detailed award that includes "written findings of fact and conclusions of law." New Elliot Corp. v. MAN Gutehoffnungshuette AG, 969 F. Supp. 13, 14-15 (1997). Where parties so stipulate, "the Court should ensure that the award gives effect to that intent." Carmody Bldg. Corp. v. Richter & Ratner Contracting Corp., 08 Civ. 9633 (SHS), 2013 WL 4437213, at *3 (S.D.N.Y. Aug. 19, 2013). In New Elliot Corp., for example, the district court vacated the arbitration award, finding that the arbitrator's "largely conclusory" findings did not satisfy the "written findings of fact and conclusions of law" standard set forth in their arbitration agreement. New Elliot Corp., 969 F. Supp. at 15. In reaching this decision, the district court noted that "there is no way a reasonable reviewing Court can with any confidence ascertain the reasons for the arbitrators' decisions." Id.

While the Second Circuit has not defined what constitutes a "reasoned award," it has stated that "the varying forms of [arbitration] awards may be considered along a 'spectrum of increasingly reasoned awards,' with a 'standard award' requiring the least explanation and 'findings of fact and conclusions of law' requiring the most." Cat Charter, LLC, 646 F.3d at 844 (quoting ARCH Dev. Corp. v. Biomet, Inc., No. 02 C 9013, 2003 WL 21697742, at *4 (N.D. Ill. July 30, 2003)). Many courts in this District have found that a "reasoned award" requirement means "that the arbitrator is obligated to present 'something short of findings [of fact] and

23

conclusions [of law] but more than a simple result.'" Fulbrook Capital Management LLC v. Batson, 14 Civ. 7564 (JPO), 2015 WL 321889, at *5 (S.D.N.Y. Jan. 26, 2015) (quoting Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med., 12 Civ. 6280 (LAK), 2013 WL 1245549, at *3 (S.D.N.Y. Mar. 26, 2013), appeal withdrawn (Aug. 20, 2013) (quoting Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469, 473 (5th Cir. 2012) (internal quotation marks omitted)) (alterations in Leeward); see also Carmody, 2013 WL 4437213, at *3 (same); Am. Centennial Ins. Co., 2012 WL 2821936, at *8 (same).

It is clear that an arbitrator required to render a "reasoned award" is not "obligate[d] . . . to discuss every single piece of evidence or 'to show how every single proposition [he] adopted could be derived from first principles.'" Carmody, 2013 WL 4437213, at *4 (quoting Leeward, 2013 WL 1245549, at *3). Courts in this district find an award adequately "reasoned" where it "sets out the arbitrator's key findings and, where necessary, the reasons for those findings." Fulbrook, 2015 WL 321889, at *5 (finding "reasoned award" where arbitrator's award "charts the path to its result with clear and well-reasoned findings" and "explains in full its rejection of . . . Petitioners' most important argument"); see also Leeward, 2013 WL 1245549, at *3 (finding award sufficiently reasoned where "[t]he decision . . . was well over thirty pages long with considerable detail regarding the panel's findings and conclusions as to the various components of the overall award"); Carmody, 2013 WL 4437213, at *4 (upholding arbitrator's award as "reasoned" where the "eight-page award . . . set forth at length the history of the dispute and [the arbitrator's] findings with regard to each issue submitted to him, as well as an explanation for each of his findings"); Am. Centennial, 2012 WL 2821936, at *9 (upholding award as "reasoned" where the arbitrators, "[i]n seven pages and thirty numbered paragraphs, . . . recite[d] the relevant terms of the Agreement, the history of the dispute, the

24

findings of the prior panels, and the panel's rationale for awarding [respondent reinsurer] a 15% – and not a 30% or 45% – reduction [on all losses and loss adjustment expenses paid by petitioner insurer]. . . . The panel thus 'rendered more than a standard award, which would be a mere announcement of [its] decision.'") (quoting <u>Rain CII Carbon, LLC</u>, 674 F.3d at 474) (affirming denial of <u>vacatur</u> where eight-page decision "laid out the facts, described the contentions of the parties, and decided which of the two proposals should prevail").

Here, unlike in the cases cited above, the arbitrator's two page "final award" offers no explanation whatsoever for his rulings on Tully's claims and Canam's counterclaims. <u>See</u> Rogers Decl. (Dkt. No. 8) Ex. 1 (Final Award of Arbitrator). The arbitrator does not set forth the relevant facts, explain the nature of the claims, or offer any reason or rationale for his determinations as to liability and damages. (<u>Id</u>.) Instead, the arbitrator merely lists various categories of monetary damages without any explanation as to how he calculated those figures or determined liability. (<u>Id</u>.) In response to Canam's request that he vacate the award and issue a reasoned award, the arbitrator correctly identified the three commonly recognized award formats – <u>i.e.</u>, standard award, reasoned award, and findings of fact and conclusions of law – but offered no authority for his assertion that his "final award" was "a 'reasoned award' under all applicable rules, statutes, and case law." (Rogers Decl. (Dkt. No. 8), Ex. 30)

The precedent discussed above makes clear that a "a 'reasoned' award is an award that is provided with or marked by the detailed listing <u>or mention of</u> expressions or statements offered as a justification . . . [for] the decision of the [arbitrator]." <u>Cat Charter</u>, 646 F.3d at 844 (emphasis in original). Where, as here, an arbitration award contains no explanation whatsoever

25

for the arbitrator's rulings, it is not a "reasoned award."[9]  The cases cited by Tully (Pet. Opp. Br. (Dkt. No. 18) at 16-18) are not to the contrary.

In Rain CII Carbon, LLC v. ConocoPhillips Co., 674 F.3d 469 (5th Cir. 2012), for example, the court considered a dispute about the proper formula for determining a product's market price.  The parties' contract contained a complex formula for determining the market price of "green coke."  The agreement further provided that where a party "reasonably concluded that the contract formula no longer yield[ed] market price," that party could reopen price negotiations.  Rain CII Carbon, LLC, 674 F.3d at 471.  In the event that negotiations reached an impasse, the matter would be submitted to arbitration.  The parties further agreed that – in the arbitration – each side would submit its proposal for determining market price, and the arbitrator would select one of the two.  Id.  For its proposal, Rain submitted the same formula contained in the original agreement.  Conoco submitted a different formula.  In an "eight page[] [award], the arbitrator laid out the facts, described the contentions of the parties, and decided which of the two proposals should prevail."  Id. at 474.  The Fifth Circuit concluded that this was sufficient to constitute a "reasoned award," because it was clear from context that the arbitrator had concluded that "Conoco had failed to show that the initial formula failed to yield market price." Id.

Nothing in Rain CII Carbon suggests that the award in the instant case constitutes a reasoned award.  The arbitrator here did not discuss the relevant facts or set forth the parties'

---

[9]  Webster's defines "reasoned" as "based on or marked by reasoning," and "provided with or marked by the detailed listing or mention of reasons."  Webster's Third New Int'l Dictionary: Unabridged 1892 (1993).  The term "reason" as used in this context is defined, in turn, as "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure," and/or "a sufficient ground of explanation or of logical defense," i.e., "a general principle, law, or warranted presumption that supports a conclusion, explains a fact, or validates a course of conduct."  Id. at 1891.

contentions.  Nor is it possible, from the award, to determine the reason or rationale for the
arbitrator's liability and damages determinations.

                Similarly, in <u>Cat Charter</u>, 646 F.3d 836 (11th Cir. 2011), the court upheld an
award as reasoned where the arbitrator stated that plaintiffs had proven their claims "by the
greater weight of the evidence."  The Eleventh Circuit concluded that the award was sufficiently
"reasoned" because it was clear, in context, that "the controversy . . . turned primarily upon
credibility determinations made by the [Arbitration] Panel":

> The context of the Panel's statements and the fact that the Award provides detailed
> reasons regarding one claim, however, lead us to disagree with the Defendants[']
> [challenge to the award].  Put simply, the controversy here turned primarily upon
> credibility determinations made by the Panel.  Either the transaction proceeded along the
> lines of a duly executed contract – the Defendants' story – or the transaction surrounding
> construction of the <u>Magic</u> was punctuated by misrepresentations and dubious behavior on
> the Defendants' part – the Plaintiffs' story.  The statement that "[o]n the claim of the
> Claimants . . . for breach of contract . . . we find that Claimant . . . has proven its claim
> against MTI by the greater weight of the evidence" is easily understood to mean that, in
> the swearing match between the Plaintiffs and the Defendants, the Panel found the
> Plaintiffs' witnesses to be more credible.  We certainly cannot say that this statement is
> devoid of any statements offered as a justification; the reason for the Plaintiffs' victory is
> plainly provided.

<u>Cat Charter</u>, 646 F.3d at 844-45.  The court went on to note that

> the Panel provided a detailed explanation for the only conclusion that truly
> required it – the determination of the prevailing party for each claim and the
> concomitant award of attorney's fees.  The Panel rejected the Plaintiffs' claim for
> civil theft, but nonetheless declined to award the Defendants attorney's fees on
> that claim, even though they would appear to be the substantially prevailing party.
> To clarify, the Panel wrote that the Plaintiffs "raised a claim that had substantial
> fact and legal support" and that, "[m]ore specifically, we find the issues relating
> to missing resin and the cost of the skiff presented substantial fact issues raised by
> Claimants, justifying denial of any attorney's fees for" the Defendants.  These
> statements clearly provide more than a simple result, and give ample justification
> for the decision of the Panel.  In short, the Award was a reasoned one.

Id. at 845. Here, in contrast, the arbitrator offered no reason for his liability and damage

determinations, and this Court cannot infer that those determinations turned primarily on the

credibility of the witnesses.

Finally, in Green v. Ameritech Corp., 200 F.3d 967 (6th Cir. 2000), the Sixth

Circuit considered an arbitration agreement that required the arbitrator to "explain" his decision.

The court concluded that this standard was met, because the arbitrator

> set forth facts pertaining to the dispute and a brief discussion of each of the three
> claims. With regard to age and race discrimination, the arbitrator wrote that
> considering all of the evidence, [the plaintiff] had not met his burden of proof
> that the decision to terminate his employment constituted discrimination. The
> arbitrator wrote slightly more about the retaliation claim, stating that [the
> plaintiff] had not met his burden of proving that retaliation for protected activity
> was a factor in the decision to terminate his employment.

Green, 200 F.3d at 976. Although the plaintiff objected to the "brevity and the conclusory nature

of the arbitrator's opinion," the Sixth Circuit found that the award, while "certainly minimal,"

was sufficient:

> The arbitration agreement . . . contained only the inexact requirement of an
> explanation as to each theory, and we find it significant that the arbitrator's
> opinion provided a separate discussion regarding each of the plaintiff's theories
> and explained, albeit briefly, the reasons for denying recovery on each one.

Id.

Nothing in the cases cited by Tully suggests that the line item award issued here

constitutes a "reasoned award." A simple numerical value attached to a damages claim does not

constitute a "factual finding," nor does the award set forth any reason or rationale for the liability

and damages determinations that are made. Accordingly, this Court concludes that the arbitrator

failed to issue a "reasoned award" as called for by the parties' Arbitration Agreement.

28

**3.    The Arbitrator Exceeded His Powers
       By Issuing an Improper Form of Award**

Having concluded that the arbitrator did not issue the "reasoned award" required

by the Arbitration Agreement, this Court must determine whether that failure justifies vacatur

under Section 10(a)(4) of the FAA.[10]   The Second Circuit has not yet addressed whether an

arbitrator who has issued an improper form of award can be said to have "exceeded [his or her]

powers."   The Second Circuit has, however, "'"consistently accorded the narrowest of readings"

to the FAA's authorization to vacate awards pursuant to [Section] 10(a)(4).'"   T.Co Metals, LLC

v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 342 (2d Cir. 2010) (quoting Banco de Seguros

del Estado, 344 F.3d at 262 (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200,

220 (2d Cir. 2002)).   That remedy must be "strictly limited" "'in order to facilitate the purpose

underlying arbitration:  to provide parties with efficient dispute resolution, thereby obviating the

need for protracted litigation.'"   Id. (quoting ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life

Co., 564 F.3d 81, 85 (2d Cir. 2009)).   Moreover, at least one court has questioned whether

Section 10(a)(4) applies under the circumstances here, noting that "it is very strange to assert that

an arbitrator has exceeded his powers by not doing enough."   ARCH Dev. Corp., 2003 WL

21697742, at *4 n.4 (N.D. Ill. July 30, 2003) (emphasis in original).

Courts in this District have assumed without deciding, however, that Section

10(a)(4) provides a proper basis for vacatur where the form of an arbitrator's award differs from

that called for in the parties' agreement.   See Carmody, 2013 WL 4437213, at *3 ("[P]arties may

stipulate that the arbitrator provide a more detailed award, in which case the Court should ensure

---

[10]  Although the Second Circuit has held that "an arbitrator's award may . . . be vacated 'where
[it] is in manifest disregard of the terms of the [parties'] agreement,'" Schwartz, 665 F .3d at 452
(quoting Yusuf Ahmed, 126 F.3d at 23), Canam has not urged vacatur on this ground.
Accordingly, this Court only considers whether vacatur is proper under Section 10(a)(4).

that the award gives effect to that intent."); Leeward, 2013 WL 1245549, at *3 (rejecting

argument that arbitrator exceeded his powers, but noting that "the award may have been deficient

if it summarily had indicated agreement with all of [petitioner's] contentions"); Am. Centennial,

2012 WL 2821936, at *8 ("'An arbitrator may also exceed her authority by failing to provide an

award in the form required by an arbitration agreement.'") (quoting Cat Charter, 646 F.3d at

843).

    Moreover, the circuit courts that have considered this issue on the merits have

uniformly concluded that an arbitrator exceeds his or her authority by issuing an improper form

of award. See, e.g., Cat Charter, 646 F.3d at 843 & n.14 (explicitly rejecting ARCH Dev. Corp.

and holding that "[a]n arbitrator may also exceed her authority by failing to provide an award in

the form required by an arbitration agreement"; "an arbitrator can, in fact, exceed his powers by

'not doing enough'"); W. Emp'rs Ins. v. Jeffries & Co., 958 F.2d 258, 260 (9th Cir. 1992)

(vacating arbitration award where arbitrator failed to provide "findings of fact and conclusions of

law" as required by the arbitration agreement; "[b]y failing to abide by the contract from which

[the National Association of Securities Dealers] derived its power to hear the dispute, the

arbitrators exceeded their powers under 9 U.S.C. § 10[(a)(4)] of the [FAA]"); Sutter v. Oxford

Health Plans LLC, 675 F.3d 215, 219-20 (3d Cir. 2012), as amended (Apr. 4, 2012), aff'd, 133 S.

Ct. 2064 (2013) ("An arbitrator . . . subjects his award to judicial vacatur under § 10(a)(4), when

he . . . grants relief in a form that cannot be rationally derived from the parties' agreement and

submissions.") (citing Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998

Year of Account, 618 F.3d 277, 295-96 (3d Cir. 2010)); see also 21st Fin. Servs., L.L.C. v.

Manchester Fin. Bank, 747 F.3d 331, 336 (5th Cir. 2014) ("'[w]here arbitrators act contrary to

express contractual provisions, they have exceeded their powers'") (quoting Apache Bohai

Corporation LDC v. Texaco China BV, 480 F.3d 397, 401 (5th Cir. 2007)); Rain CII Carbon,

2011 WL 2565345, at *6 ("the provisions of the Agreement required the arbitrator to render a

reasoned award, and if he failed to do so he thus exceeded his power and therefore vacatur is

proper"). The Sixth Circuit has likewise "assume[d] without deciding that an arbitrator can

exceed his powers in violation of [Section] 10(a)(4) by failing to fulfill his obligations, as

opposed to by overstepping the bounds of his authority." Green, 200 F.3d at 975 n.6.

    This Court concludes that an arbitrator exceeds his or her powers when the

arbitrator renders a form of award that does not satisfy the requirements the parties stipulated to

in their arbitration agreement. In issuing an award in a form that does not comply with the

arbitration agreement that is the source of the arbitrator's power and authority, an arbitrator does

in fact exceed the authority that was granted to him to resolve the parties' dispute. As the

Eleventh Circuit explained in Cat Charter,

> the [FAA] makes clear [that] arbitration is a creature of contract. Parties must
> agree to arbitrate in the first instance, and may contractually limit or alter the
> issues to be presented to the arbitrators, the scope of the award, and, as here, the
> form of the award. The FAA "requires courts to enforce privately negotiated
> agreements to arbitrate, like other contracts, in accordance with their terms." Volt
> Info. Scis., Inc. v. Bd. of Trustees, 489 U.S. 468, 478 (1989). Ultimately,
> arbitrators derive their powers from the parties' agreement.

646 F.3d at 843.

    As the Second Circuit has stated,

> the scope of authority of arbitrators generally depends on the intention of the
> parties to an arbitration, and is determined by the agreement or submission. Such
> an agreement or submission serves not only to define, but to circumscribe, the
> authority of arbitrators. If it is clear that the arbitrator has exceeded his authority,
> the award cannot stand.

Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL-CIO v. Brooks Drug Co.,

956 F.2d 22, 25 (2d Cir. 1992) (internal citations and quotation marks omitted).

31

Here, the parties' intentions with respect to the form of award are clear. The Arbitration Agreement stipulates that the AAA Arbitration Rules for Complex Construction Cases will govern the arbitration. Those rules require that the award be in the form of a "reasoned award." Accordingly, the arbitrator was required to issue an award that constitutes a "reasoned award." In issuing a line item award devoid of reasoning, the arbitrator did not comply with the parties' agreement and thereby exceeded the authority granted to him. Accordingly, the award cannot stand.

### 4.     The Proper Remedy is a Remand for Clarification

Tully contends that in the event this Court determines that the arbitrator exceeded his authority by issuing an improper form of award, the proper remedy is a limited remand to Arbitrator Krol for purposes of issuing a "reasoned award." See Pet. Opp. Br. (Dkt. No. 18) at 17-18 (citing and quoting Cannelton Industries, Inc. v. District 17, United Mine Workers, 951 F.2d 591, 594 (4th Cir. 1991) ("A court's power to vacate an award because of an arbitrator's failure to address a crucial issue necessarily includes a lesser power to remand the case to the same arbitrator for a determination of that issue.")). Canam has not addressed this issue.

While two district courts have concluded that remand is improper under such circumstances – citing the common law doctrine of functus officio[11] – that view has been rejected by the circuit courts. See Green v. Ameritech Corp., 12 F. Supp. 2d 662, 666 (E.D.

---

[11] "The functus officio doctrine dictates that, once arbitrators have fully exercised their authority to adjudicate the issues submitted to them, 'their authority over those questions is ended,' and 'the arbitrators have no further authority, absent agreement by the parties, to redetermine th[ose] issue[s].'" T.Co Metals, 592 F.3d at 342 (alterations in original) (quoting Trade & Transp., Inc. v. Natural Petroleum Charterers Inc., 931 F.2d 191, 195 (2d Cir. 1991)). Courts recognize three exceptions to this doctrine: "[(1)] to allow the arbitrator to correct a clerical or arithmetic mistake that is apparent on the face of the award, [(2)] to allow the arbitrator to rule upon an issue presented to the panel but not adjudicated, and [(3)] to clarify an ambiguity in an otherwise seemingly complete award." Cat Charter, 691 F. Supp. 2d at 1345 (citations omitted).

Mich. 1998), rev'd, 200 F.3d 967, 976-78 (6th Cir. 2000) (stating in dicta that the district court incorrectly determined that the functus officio doctrine would bar a remand requiring the arbitrator to explain his decision; "[w]hile a failure to fully explain an award does not leave . . . an interpretive gap, we believe that it would nevertheless authorize a remand based on [the] third exception to the functus officio doctrine. The purpose of this exception is to permit the arbitrator to complete an assigned task, and in this case the district court adjudged the arbitrator's task incompletely executed. Remanding to Arbitrator Googasian under these circumstances would not implicate any of the concerns underlying the functus officio doctrine, as he would simply be completing his duties by clarifying his reasoning, not reopening the merits of the case."); Cat Charter L.L.C. v. Schurtenberger, 691 F. Supp. 2d 1339, 1345 (S.D. Fla. 2010), rev'd and remanded on other grounds sub nom. Cat Charter, 646 F.3d at 842 n.9 (11th Cir. 2011) (in dicta stating: "we note approvingly that [in Green v. Ameritech Corp., 200 F.3d 967, 976-78 (6th Cir. 2000)] a sister circuit, when faced with a nearly identical factual scenario, deemed the [functus officio] doctrine inapplicable and remand to the original arbitrators appropriate") (citing Green, 200 F.3d at 976-78); see also Office & Prof'l Emps. Int'l Union, Local No. 471 v. Brownsville Gen. Hosp., 186 F.3d 326, 331-32 (3d Cir. 1999) (explaining that remand "serves the practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced" and thus that "there is not even a theoretical inconsistency with the functus officio doctrine"); Galt v. Libbey-Owens-Ford Glass Co., 397 F.2d 439, 442 (7th Cir. 1968) (remand "serve[s] to give the parties what they bargained for – a clear decision from the arbitrator[ ]").

The reasoning of the Sixth and Eleventh Circuits is consistent with the case law of this Circuit. See, e.g., Siegel, 779 F.2d at 894 ("courts on occasion may remand awards to arbitrators to clarify the meaning or effect of an award, or to determine whether the arbitrator has

33

in some way exceeded his powers.") (internal citations omitted); <u>see also id.</u> at 893-94 ("The arbitrators have provided no clue as to how they reached the precise result of $13,877,263 – a number apparently arrived at after a series of calculations. Although we have stated that arbitrators may render a lump sum award without disclosing their rationale for it, we suggested at the same time that a court has the power to inquire into the basis of an award if it believes that the award was rendered in 'manifest disregard' of the law or if the facts of the case fail to support it.") (citations and internal quotation marks omitted)).

In sum, this Court concludes that it is authorized to remand this matter to Arbitrator Krol for purposes of issuing a "reasoned award," and that the doctrine of <u>functus officio</u> presents no impediment to that approach.

## CONCLUSION

For the reasons stated above, this matter is remanded to Arbitrator Krol for the limited purpose of issuing a "reasoned award." Accordingly, Petitioner's motion to confirm the arbitration award (Dkt. No. 1) is denied. Respondent's cross-motion to vacate the award (Dkt. No. 7) on the grounds that Arbitrator Krol manifestly disregarded the law and committed misconduct is denied. Respondent's cross-motion is granted, however, to the extent that the case is remanded to Arbitrator Krol so that he may provide a "reasoned award." The Clerk will terminate the motions (Dkt. Nos. 1, 7) and close this case. Either party may move to re-open this case within thirty days of Arbitrator Krol's issuance of a revised award.

Dated: New York, New York
     March 2, 2015          SO ORDERED.

Paul G. Gardephe
United States District Judge

34